IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PENN-AMERICA INSURANCE §
COMPANY, §
              Plaintiff, §
 §
v. §      Civil Action No. 3:20-cv-01388-S-BT
 §
TARANGO TRUCKING, LLC; §
PRECIOUS ROBERSON, individually §
and on behalf of her minor children, §
S.B. & F.B.; and PAMELA WASH, §
          Defendants. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This insurance coverage dispute is before the Court on cross motions for summary judgment filed by Plaintiff Penn-America Insurance Company (Penn-America) and Defendant Tarango Trucking, LLC (Tarango). At issue is whether Penn-America has a duty under a commercial general liability insurance policy it issued to Tarango to defend and indemnify Tarango from claims in a wrongful death lawsuit pending in the 160th District Court for Dallas County, Texas, *Precious Roberson, Individually and On Behalf of Her Minor Children, S.B. & F.B., and Pamela Wash v. WS Excavation, LLC and Tarango Trucking, LLC*, Cause No. DC-20-04027 (the "Underlying Action"). For the reasons stated, the Court should GRANT Penn-America's Motion for Summary Judgment (ECF No. 23) and DENY Tarango's Motion for Summary Judgment (ECF No. 28).

## Background

The plaintiffs in the Underlying Action allege that SirMyron Birks-Russell (Russell) died on March 2, 2020, as a result of a "gruesome and avoidable" accident on Tarango's premises. Pl.'s MSJ App. Ex. B-2 82 (ECF No. 24). According to the live pleading in that action,[1] Russell worked as a driver for the short-haul trucking company, WS Excavation, LLC (WSE). *Id.* On the day of the accident, Russell drove a WSE-owned tractor-trailer rig to Tarango's trucking facility in Dallas, Texas. *Id.* Russell parked his rig and began to inspect and off-load heavy equipment from the trailer. *Id.* He unhitched the tractor from the trailer and attempted to operate the hydraulic lift on the trailer. *Id.* While Russell was operating the lift, the tractor's braking system disengaged and, allegedly because of "the dangerous slope and grade of the trucking lot," the tractor rolled quickly backwards, striking Russell and "crushing and pinning his body—while still live—beneath the weight of the tractor." *Id.* at 82–83. The trailer also struck Russell's parked personal vehicle, causing significant property damage to that vehicle. *Id.* at 83.

WSE and Tarango employees called 911, but they purportedly ignored the dispatcher's instructions not to move the tractor off Russell before emergency personnel arrived. *Id.* Instead, individuals on the scene used excavation

---

[1] The live pleading in the Underlying Action is the state court plaintiffs' Second Amended Petition, filed on September 9, 2020. *See* Pl.'s MSJ App., Ex. B-2 (ECF No. 24).

equipment to lift the truck and dragged Russell's body from beneath the tractor. *Id.* Russell later died at the hospital. *Id.*

Russell's surviving wife, individually and on behalf of her two minor children, and his mother subsequently brought suit against WSE and Tarango in Dallas County District Court seeking $15 million in damages. *Id.* at 90. In their live pleading, these state court plaintiffs allege:

> Russell's senseless death could have been avoided had Defendants taken appropriate steps to properly maintain and service the tractor trailer assigned to [Russell], implement policies and safety equipment designed to avoid malfunctions and unsafe conditions, provided employees with a reasonably safe working environment to unload dangerous and heavy equipment, and followed the 911 instructor's instructions not to move [Russell] until emergency personnel arrived on site.

*Id.* at 84–85. Specifically, as to Tarango, they assert claims for premises liability and gross negligence, alleging:

> [Russell's] tragic death also occurred because Tarango Trucking, LLC failed to maintain a level parking and loading facility, where dozens of trucks are stored, parked, and off-loaded. Failing to maintain a level parking lot, where dangerous and heavy equipment are routinely offloaded and parked, posed a serious likelihood that this unlevel parking lot would eventually cause serious injury and/or death. A level parking lot is required by industry standards and guidelines to prevent dangerous and heavy equipment and trucks from rolling back and causing severe injury or death. But, Defendants ignored these industry standards, requirements, guidelines, and regulations and refused to ensure that their parking lot was flat and safe for drivers to unload heavy equipment and park large eighteen-wheeler trucks at their facility . . . .

*Id.* at 84.

3

Shortly after the Underlying Action commenced, Tarango tendered to Penn-America a demand for defense under the commercial general liability insurance policy (the "Policy") Penn-America issued to Tarango (Policy No. PAV0231885), with an effective period from October 5, 2019 to October 5, 2020. Pl.'s First Am. Compl. 5 (ECF No. 5). Section I of the Policy provides Penn-America has a duty to defend and indemnify Tarango against claims for bodily injury covered by the Policy:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Pl.'s Ex. B 28 (ECF No. 5-2).

The Policy also contains several endorsements that modify coverage. The auto exclusion endorsement (the "Auto Exclusion"), for example, excludes from coverage bodily injury "arising out of the ownership, maintenance or use by any person" of an "auto." Specifically,

> This insurance does not apply to:
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance or use by any person or entrustment to others, of any aircraft, "*auto*", or watercraft.

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved an aircraft, "auto", or watercraft. Use includes operation and "loading or unloading".

*Id.* at 51 (emphasis added). The Policy defines an "auto" as:

> a.  A land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
>
> b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

*Id.* at 40.

The Policy further includes an exception (the "Parking Exception") to the Auto Exclusion, which states that the Auto Exclusion does not apply to "[p]arking an 'auto' on, or on the ways next to, premises you own or rent provided the 'auto' is not owned by or rented or loaned to . . . the insured." Pl.'s MSJ App., Pl.'s Ex. A-1 62.

Penn-America agreed to defend Tarango in the Underlying Action under a complete reservation of rights and filed this action against Tarango seeking a declaratory judgment determining the rights of the parties under the Policy. Pl.'s Am. Compl. 8. Penn-America claims that "[t]he Policy does not provide coverage for the Underlying Action or for the claims and damages asserted and sought in the Underlying Action pursuant to the Policy's terms, condition, limitations, and

exclusions." *Id.* at 9. Specifically, it claims that the Policy's Auto Exclusion applies and bars coverage. Tarango disagrees, asserting that the Auto Exclusion does not preclude coverage because: (1) Russell's injuries arose from Tarango's alleged negligence in rendering aid after the accident and, thus, did not arise out of the maintenance or use of an auto; (2) the Auto Exclusion does not apply to the underlying premises liability claim; and (3) the Parking Exception restores coverage because Russell's injuries arose out of parking the tractor-trailer. Def.'s Mot. Summ. J. 3.

Penn-America and Tarango filed cross motions for summary judgment. (ECF Nos. 23, 28). The parties fully briefed the issues, *see* Def.'s Resp. Pl.'s Mot. Summ. J. (ECF No. 26); Pl.'s Reply Pl.'s Mot. Summ. J. (ECF No. 32); Pl.'s Resp. Def.'s Mot. Summ. J. (ECF No. 34); Def.'s Reply Def.'s Mot. Summ. J. (ECF No. 36), and the motions are ripe for determination.

## Legal Standards

### Summary Judgment

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where, as here, a case is presented by way of cross-motions for summary judgment, the parties' burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial. A movant who bears the burden of proof at trial must establish "beyond peradventure all of the essential elements of the [claim or] defense to warrant judgment in his favor." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (emphasis removed) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This burden is a "heavy" one. *See, e.g., Taylor v. Metro. Life Ins. Co.*, 366 F. Supp. 3d 810, 814 (N.D. Tex. Feb. 14, 2019) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)).

By contrast, a party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). To do so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Summary judgment is mandatory where the nonmovant fails to meet its burden. *Id.* at 1076.

<u>Insurance Policies</u>

Cases involving the interpretation of insurance policies are particularly appropriate for summary disposition. *See Principal Health Care of La., Inc. v.*

*Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994); *SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 677 (N.D. Tex. Apr. 25, 1996), *aff'd*, 133 F.3d 373 (5th Cir. 1998).

Under Texas law, the insured initially bears the burden of establishing coverage under the terms of the insurance policy. *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008)).[2] Once coverage is established, the burden shifts to the insurer to prove the loss is within an exclusion to coverage if it wishes to avoid liability. *Id.* If such an exclusion does apply, the insured must then establish that an exception to the exclusion exists to restore coverage. *Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) (citing *Gilbert*, 327 S.W.3d at 124). "When determining whether each side has satisfied its burden, the Texas Supreme Court has instructed [ ]—when applying Texas law—to 'resolve all doubts regarding the duty to defend in favor of the duty' " and to construe the pleadings liberally. *State Farm Lloyds v. Richards*, 966 F.3d 389, 393 (5th Cir. 2020) (quoting *Zurich Am. Ins. Co. v. Nokia*, Inc., 268 S.W.3d 487, 491 (Tex. 2008)).

Courts interpret insurance policies under ordinary principles of contract law. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir.

---

[2] When a court exercises diversity jurisdiction, as it does here, it is bound to apply the law as would a Texas Court. *US Bank N.A., Tr. to LaSalle Bank Nat'l Ass'n v. Parson*, 2020 WL 7295838, at *6 (N.D. Tex. Nov. 20, 2020) (Rutherford, J.) (citing *Eerie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Charalambopoulos v. Grammer*, 2017 WL 606639, at *12 (N.D. Tex. Feb. 15, 2017) (Fitzwater, J.)).

2020); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Faced with a coverage dispute, the court's "primary concern is to give effect to the intentions of the parties as expressed by the policy language." *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). In doing so, the court gives terms used in the policy "their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning." *Id.* But "[w]hen terms are defined in an insurance policy, those definitions control the interpretation of the policy." *E. Concrete Materials*, 948 F.3d at 300 (internal quotation marks omitted) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003)).

As neither party contends that the Policy is ambiguous, the Court may construe it as a matter of law. *See Likens v. Hartford Life and Accident Ins. Co.*, 794 F. Supp. 2d 720, 725 (S.D. Tex. Jun. 29, 2011) ("If an insurance policy is worded so that it can be given a definite meaning or certain legal meaning, then the policy is not ambiguous and is construed by the court as a matter of law."); *see also Forbau*, 876 S.W.2d at 134 (explaining that "not every difference in the interpretation of a contract or an insurance policy amounts to an ambiguity").

## Analysis

### I.  Penn-America has no duty to defend Tarango in the Underlying Action.

Whether an insurer has a duty to defend its insured in an underlying lawsuit is a question of law. *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 471–72 (5th Cir. 2009) (citing *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599

(5th Cir. 2006)). Under the well-established "eight corners" rule of Texas insurance law, "an insurer's duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Richards*, 966 F.3d at 392 (internal quotation marks omitted) (quoting *Pine Oak Builders, Inc v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)) ("The petition's (or complaint's) 'four corners' + the policy's 'four corners' = the 'eight corners' that give the rule its name."). "The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997) (quoting *Frito-Lay*, 788 S.W.2d at 154).

The duty to defend, therefore, arises "only when the facts alleged in the complaint, if taken as true, would *potentially* state a cause of action falling within the terms of the policy." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (emphasis in original). Any doubt as to whether allegations in the underlying action against the insured states a cause of action within the coverage of a liability policy is resolved in favor of finding a duty to defend. *Id.* "If the petition *only* alleges facts excluded by the policy, however, the insurer is not required to defend." *Id.* (emphasis in the original) (citing *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).

In the present case, plaintiffs in the Underlying Action bring two causes of action against Tarango: negligent premises liability and gross negligence. Pl.'s MSJ App., Ex. B-2 87–88. Tarango claims that these causes of action allege "bodily

injury" within the meaning of Section I of the Policy. *See* Def.'s Br. Resp. Pl.'s MSJ 12 (ECF No. 27). Penn-America does not dispute that the underlying bodily injury constitutes an "occurrence" covered by the Policy. Rather, it claims that the Policy's Auto Exclusion applies and bars coverage for the Underlying Action. Pl.'s Mot. Summ. J. 1.

    a.  The Auto Exclusion precludes coverage for the Underlying Action.

The Auto Exclusion modifies the Policy and provides that there is no coverage for bodily injuries "arising out of the ownership, maintenance or use by any person" of any "auto." Pl.'s MSJ App., Ex. A-1 62. Under the Policy, "use" includes operation and "loading or unloading." *Id.*

Texas courts treat the term "use," as a catchall encompassing "all proper uses of the vehicle not falling within other terms such as ownership an[d] maintenance." *Emps. Mut. Cas. Co. v. Bonilla*, 613 F.3d 512, 517 (5th Cir. 2010) (brackets in original) (internal quotation marks omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Pan Am. Ins.*, 437 S.W.2d 542, 545 (Tex. 1969)). "For liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle." *Mid-Century Ins. Co. of Tex., a Div. of Farmers Ins. Grp. of Cos. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999). The Fifth Circuit interprets "a causal connection or relation" to mean "that there is but for causation, though not necessarily direct or proximate causation." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 859 (5th Cir. 2006)

(internal quotation marks omitted) (quoting *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)).

The Texas Supreme Court in *Lindsey*, the seminal case regarding "auto-use" exceptions to insurance coverage, established a list of non-exhaustive factors to provide guidance in determining whether an injury arises out of the use of a vehicle:

> (1)  the accident must have arisen out of the inherent nature of the automobile, as such;
>
> (2)  the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated; and
>
> (3)  the automobile must not merely contribute to cause the condition to which produces the injury but must itself produce the injury.

*Id.* at 859; *see also Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 154 (Tex. 2010) (referring to *Lindsey* as the "leading case" regarding " 'auto-use' exceptions or inclusions to coverage"). The court additionally included a fourth factor: whether the individual intended to use the vehicle as a vehicle. *Lyons v. State Farm Lloyds and Nat'l Cas. Co*, 41 S.W.3d 201, 205 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Lindsey*, 997 S.W.2d at 156). "The use required is of the vehicle *qua* vehicle, rather than simply as an article of property." *Lindsey*, 997 S.W.2d at 156.

Penn-America argues that Russell's accident falls under the Auto Exclusion because the petition in the Underlying Action pleads facts showing that Russell's

injury arose out of the maintenance or use of the tractor trailer. Pl.'s MSJ Br. 13–15. Tarango disagrees, urging that the endorsement does preclude coverage "because Tarango's alleged acts and omissions with respect to the rescue effort do not arise out of the maintenance or use of an 'Auto.' " Def.'s Reply Def.'s Mot. Summ. J. 2. However, the petition in the Underlying Action plainly alleges a causal connection between the March 2, 2020 accident and Russell's use of the WSE-owned tractor-trailer rig.

Specifically, the petition alleges that Russell was a truck driver working for WSE at the time of the March 2, 2020 accident. Pl.'s MSJ App., Ex. B-2 82. His injuries occurred during a delivery to Tarango's lot, after he had parked the tractor-trailer at the facility, and while he was unloading the trailer. *Id* "[T]he tractor's braking system disengaged, causing the tractor to roll back and strike [Russell], crushing and pinning his body—while still live—beneath the weight of the tractor." *Id.* 82-83. The accident allegedly "also occurred because [Tarango] failed to maintain a level parking and loading facility," *id.* 84; but Russell would not have been injured "but for" the tractor-trailer and its impaired braking system.

Application of the *Lindsey* factors further favors finding that Russell's injuries arose out of his use of the tractor trailer. First, it is clear that the March 2, 2020 accident arose out of the inherent nature of the tractor trailer. Russell was pinned under the rig during a trip to Tarango's facility. He was properly using the tractor-trailer for its intended purpose of hauling materials and was unloading those materials from the trailer when the brakes failed. Indeed, there is no

allegation in the petition that Russell used WSE's rig improperly or in an unintended manner. *See Glob. Enercom*, 323 S.W.3d at 155 (internal quotation marks omitted) (quoting *Lindsey*, 997 S.W.2d at 158) (ruling that injuries in an underlying action arose from the inherent nature of a truck in hauling and towing materials as such work "was not an unexpected or unnatural use of the vehicle"). Second, Russell's accident clearly arose within the natural territorial limits of the tractor trailer. In *Lindsey*, this factor was met even though the injury occurred in an adjacent vehicle. *Lindsey*, 997 S.W.2d at 154 (policy provided coverage where child climbed into a pickup truck through the truck's sliding rear window, accidentally touching a loaded shotgun resting in a gun rack mounted over the rear window, causing the gun to discharge buckshot striking the victim seated in a car parked next to the pickup). Also, the accident occurred while Russell was unloading cargo from the trailer. And third, the tractor trailer itself allegedly produced Russell's injuries; the tractor rolled onto Russell, crushing his body beneath its weight.

Contrary to Tarango's suggestion, WSE's rig was not merely the place where the accident occurred. "When a vehicle is the mere situs of the injury, indistinct from any other situs, it is not being 'used' withing the meaning of an auto exclusion." *Salcedo v. Evanston Ins. Co.*, 462 F. App'x 487, 491 n.7 (5th Cir. 2012). Tarango suggests that the tractor was merely an "article of property," no different than a concrete pipe or piece of furniture, thus rendering the truck the mere situs of Russell's injuries. Def.'s Br. Resp. Pl.'s MSJ 20, 20 n.9. To support this

contention, Tarango cites to *LeLeaux v. Hamshire-Fannett ISD*, 835 S.W.2d 49, 51 (Tex. 1992), and *Tucker v. Allstate Texas Lloyds Insurance Company*, 180 S.W.3d 880, 887 (Tex. App. -Texarkana 2005, no pet.). Def.'s Br. Resp. Pl.'s MSJ 20, 20 n.9.

In *LeLeaux*, the Texas Supreme Court ruled that a high-school student's injury did not arise from "operation or use" of a school bus such that the school district waived its governmental immunity under the Tort Claims Act. *LeLeaux*, 835 S.W.2d at 50, 52. After the student hit her head on the back door of a stationary bus, she filed a petition alleging that the school district was negligent in the way it unloaded and loaded the bus and that the bus driver was negligent by telling the students they could enter through the back door. *Id.* at 50, 51–52. This injury did not arise from the use of the bus, according to the court, because the plaintiff's injury "did not arise from permission to load and unload through the door." *Id.* at 52. The court considered that the bus was empty; it was parked without the engine running; and that the student was "not returning to her seat, or putting something on the bus, or retrieving an article from the bus, or preparing to leave." *Id.* at 51–52. The bus was not " 'doing or performing a practical work'; it was not being 'put or [brought] into action or service'; it was not being 'employ[ed] or appl[ied] to a given purpose.' " *Id.* at 51 (brackets in original). Therefore, the court concluded that there was no causal nexus between the use of the bus and the injury. *Id.* at 51–52.

Citing *LeLeaux*, the court in *Tucker* found that an aircraft covered by an insurance policy did not itself produce an injury when the insured tipped it over and pinned another person under the propeller. *Tucker*, 180 S.W.3d at 883, 887. The court justified this conclusion by reasoning that "the aircraft was obviously not being used as an aircraft; not being used as transportation; not being prepared for use; not being prepared for repair; or engaged or employed for its given purpose in any fashion." *Id.* at 887. Instead, the insured moved the plane—which was inoperable due to a cracked engine block—onto a scale to weigh it "just out of curiosity." *Id.* at 883, 888. The airplane "was sitting empty, with the motor off, no one was aboard, and it was nothing more than the place where [the insured's companion] was injured, not because of the device's action, but because of the men's actions." *Id.* at 887–88.

The facts set forth in the petition in the Underlying Action are distinguishable. In the Underlying Action, unlike the school bus in *LeLeaux* or the airplane in *Tucker*, Russell sustained injuries during the ongoing use of the tractor trailer for its intended purpose—delivering and unloading cargo. *See Lincoln Gen.*, 468 F.3d at 860 (reasoning that a child's injuries suffered in an unventilated stationary van arose from the van's use because its purpose in transporting the child was ongoing). Russell did not treat the tractor trailer as a mere piece of furniture like the insured and the injured party in *Tucker* weighing an airplane incapable of flight "out of curiosity." *See Tucker*, 180 S.W.3d at 883. Rather, Russell, while in the immediate vicinity of the tractor trailer, used the vehicle as

16

expected for its intended purpose. But for Russell's use of the rig, the tractor would not have hit him, and he would not have been injured.

Tarango implies that Russell was not "unloading"—and therefore not using—the trailer within the meaning of the Policy. *See* Def.'s Resp. Br. Pl.'s MSJ 27. The Policy defines "loading or unloading" as "the handling of property":

> a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or 'auto';
>
> b. While it is in or on an aircraft, watercraft or 'auto'; or
>
> c. While it is being moved from an aircraft, watercraft or 'auto' to the place where it is finally delivered.

Pl.'s MSJ App., Ex. A-1 55. Excluded from this definition, however, is the "movement of property by means of a mechanical device . . . that is *not* attached to the . . . 'auto.' " *Id.* (emphasis added). Tarango indirectly suggests that Russell's conduct falls outside of this definition because the petition in the Underlying Action merely alleges that Russell operated a hydraulic lift *on* the trailer—as opposed to *attached to* the trailer. Def.'s Resp. Br. Pl.'s MSJ 27.

The Court rejects Tarango's argument that Russell was not using the trailer to offload heavy equipment. He handled the equipment (a) after it departed its previous location by hauling it on the tractor trailer; (b) while it was loaded on the trailer, as the petition sets forth that Russell inspected the heavy equipment after arriving at the Property; and (c) as he moved it from the trailer using the hydraulic lift. *See* Pl.'s MSJ App., Ex. B-2 82. Nothing in the four corners of the petition

indicates that the hydraulic lift was independent from the trailer. Accordingly, Russell used the rig, as contemplated by the Auto Exclusion, as he offloaded the heavy equipment from the trailer.

Finally, Russell intended to use the tractor trailer as a tractor trailer. Unlike the airplane in *Tucker*, which lacked a functioning engine, the vehicle here was capable of use as a vehicle. Indeed, Russell drove the tractor trailer to Tarango's facility, engaged the tractor's parking brake, and proceeded to inspect and offload equipment from the trailer. *Id.* These actions were done for the intended purpose of achieving Russell's work-related objective—not for personal or other reasons. Accordingly, Russell did intend to use the tractor trailer as a tractor trailer.

To the extent that Tarango's representatives aggravated Russell's injuries by lifting the tractor off him, any such exacerbation also falls under the Auto Exclusion endorsement. Tarango claims that Russell's injuries from his extrication could not have arisen from the use of an auto because the tractor was not in use at the time it was lifted off him. *See* Def.'s Br. Resp. Pl.'s MSJ 13. Then, citing *Western Heritage Insurance Company v. Estate of Dean*, 55 F. Supp. 2d 646 (E.D. Tex. Feb. 4, 1998), Tarango claims that "courts have consistently found that alleged negligence in rendering aid after an accident is distinct from, and does not meet, a causal nexus to excluded conduct." Def.'s Br. Resp. Pl.'s MSJ 13–14.

In *Western Heritage*, an intoxicated bar patron took part in a physical altercation and suffered severe head injuries. *Western Heritage*, 55 F. Supp. 2d at 647. Employees of the bar, instead of aiding the unconscious patron, left him on

the floor to "sleep it off." *Id.* It was not until nearly an hour later that another patron asked to call 911. *Id.* The injured patron died by the time paramedics arrived. *Id.* In the insurance action regarding the patron's injuries, the court found that the insurance policy's assault and battery exclusion did not preclude coverage. *Id.* at 650. Because the underlying cause of action for failure to render aid would not have existed but for the assault and battery, the court reasoned that the policy covered the incident, as the failure to render aid claim was "separate and independent from the acts excluded under the policy exceptions." *Id.* at 650.

Penn-America argues that *Western Heritage* does not apply here because (1) it was not decided in the context of an auto exclusion endorsement to an insurance contract, which the Supreme Court of Texas has specifically ruled on multiple times; (2) no Texas Court has ever relied upon or even followed *Western Heritage*; (3) the court in *Western Heritage* took an approach that "narrowly, and incorrectly, focuses upon the source of the duty and totally discounts the broad 'arising out of' analysis consistently applied by both the Texas Supreme Court and the Fifth Circuit"; and (4) application of *Western Heritage* here would "violate the long-standing principle that courts are to construe the policy as written and give effect to each word and provision so none is meaningless." Pl.'s Resp. Def.'s MSJ 12–13.

The Court agrees that *Western Heritage* is inapposite. No court in Texas or this Circuit has ever followed *Western Heritage*; Tarango's citations to foreign jurisdictions are unavailing. The lone relevant citation to *Western Heritage* came

in another failure to render aid case in this District, in which the court explicitly declined to follow or endorse the decision. *See Hermitage Ins. Co. v. Times Square Dallas, Ltd.*, 2007 WL 9712111, at *4 n.3 (N.D. Tex. Mar. 9, 2007) ("Because *Western Heritage* is factually distinguishable from this case, the Court need not decide whether it would follow *Western Heritage* if it had to decide that question. At present, no other reported decision has followed, or even cited to, *Western Heritage*. Suffice it to say that in distinguishing *Western Heritage*, this Court is not endorsing it."). There is no need to follow or endorse *Western Heritage* here because the Supreme Court of Texas and the Fifth Circuit have written extensively on the "arising out of" analysis in auto exclusion endorsement cases. *See, e.g.*, *Salcedo*, 462 F. App'x 487; *Bonilla*, 613 F.3d 512; *Lincoln Gen.*, 468 F.3d 857; *Glob. Enercom*, 323 S.W.3d 151; *Lindsey*, 997 S.W.2d 153.

Tarango offers no further arguments to justify why any aggravation or additional injuries suffered by Russell in the extrication process should be considered independently. Any such exacerbation is derivative of Russell's use of the tractor trailer; but for the initial injuries arising out of this use, it would not have been necessary to lift the tractor off him. Additionally, the act of lifting the tractor off Russell could be considered maintenance under the Auto Exclusion endorsement, as this could be considered an action done for the purpose of "supporting, sustaining, carrying on, and continuing in its purpose." *Tucker*, 180 S.W.3d at 886; *see also Pan Am. Ins.*, 437 S.W.2d at 545 (holding that refueling a

vehicle constituted "maintenance"). Accordingly, the Court finds that the Auto Exclusion applies to preclude coverage for Russell's injuries.

### b. The Auto Exclusion applies to the premises liability claim.

Tarango claims that the Auto Exclusion does not apply to the premises liability claim in the Underlying Action because "[t]he premises liability claim does not require proof that any auto contributed" to Russell's injury and because courts in other jurisdictions have held that auto exclusion endorsement provisions do not apply to premises liability claims. Def.'s Br. Resp. Pl.'s MSJ 28–30. But when determining whether a duty to defend exists in this Circuit, "courts look to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged." *Ewing Constr.*, 420 S.W.3d at 33; *see also Northfield Ins.*, 363 F.3d at 528 ("The focus of the inquiry is on the alleged facts, not on the asserted legal theories."); *Gemini Ins. Co. v. Austin Diversified Prods., Inc.*, 2012 WL 12885059, at *3 (N.D. Tex. Dec. 14, 2012) (citing *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 392 (5th Cir. 2001)) ("The focus of the eight-corners inquiry is on the alleged facts, not on the asserted legal theories.").

Here, the Court has found that the petition in the Underlying Action alleges that Russell's injuries arose out of the use of the tractor trailer. But for this use, there would not have been an accident. Tarango offers no binding authority to suggest that a premises liability claim should be treated any differently in the context of an auto exclusion endorsement to an insurance contract. Accordingly,

the Court finds that the Auto Exclusion applies to the underlying premises liability claim. *See Markel Int'l Ins. Co. Ltd. v. Urb., LLC*, 2008 WL 11276681, at *3 (W.D. Tex. Nov. 21, 2008) (determining that the plaintiff could not avoid the operation of an insurance policy's auto exclusion endorsement "by couching her pleading as a premises liability case or offering premises liability as an alternative theory of recovery" because the facts alleged control the duty-to-defend analysis, not the theory of recovery).

### c.  The Parking Exception does not restore coverage.

As stated, once an insurer proves that an exclusion to coverage applies, the insured bears the burden of establishing than an exception to the exclusion restores coverage under the policy. *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 509–10 (5th Cir. 2020) (citing *Gilbert*, 327 S.W.3d at 124). Tarango claims that the Parking Exception to the Auto Exclusion "restores coverage for 'bodily injury' arising out of parking an 'auto' " because Russell's injury arose from parking the tractor and the petition in the Underlying Action does not allege conduct that comes within the Auto Exclusion. Def.'s Mot. Summ. J. 3. Penn-America, on the other hand, maintains that because the Parking Exception does not include "arising out of" language—and because the underlying accident triggers the Auto Exclusion—the Parking Exception does not apply to restore coverage. Pl.'s Reply Pl.'s MSJ 13–15.

The Parking Exception states that the Auto Exclusion does not apply to "[p]arking an 'auto' on, or on the ways next to, premises you own or rent, provided

the 'auto' is not owned by or rented or loaned to . . . the insured." Pl.'s MSJ App., Pl.'s Ex. A-1 62. In construing the Policy, the Court strives to determine "the parties' intent as reflected in the terms of the policy itself." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009). Therefore, it is necessary to "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Evanston Ins. Co. v. Prop. Owners and Purchasing Grp.*, 2018 WL 2223356, at *2 (W.D. Tex. Apr. 12, 2018) (quoting *Gilbert*, 327 S.W.3d at 126); *see also RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) ("We strive to give effect to all of the words and provisions so that none is rendered meaningless."). This is in accordance with the long-established rule that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau*, 876 S.W.2d at 134 (brackets in original).

First, while Tarango argues that there is no temporal component to the Parking Exception, Def.'s Resp. Pl.'s MSJ 26, the Policy—read as a whole—negates this contention. There is no language indicating that the Parking Exception applies more broadly to injuries "arising out of" parking an auto. If the Court were to read such language into the Parking Exception, it would impermissibly render inclusions of "arising out of language" in other provisions of the Policy meaningless. *See Eddie Yaklin Ford Lincoln Mercury Nissan Inc. v. Am. Rd. Ins. Co.*, 2017 WL 3387186, at *12 (S.D. Tex. Aug. 4, 2017) (declining to accept an interpretation of the word "theft" in an insurance policy that would render an

endorsement to the policy meaningless). The parties could have included "arising out of" language in the Parking Exception yet chose not to.

Russell was not injured while parking his rig. Rather, the tractor rolled back and struck him when he was unloading the trailer. Pl.'s MSJ App., Ex. B-2 82–83. Tarango offers no support, and the Court finds none, for a broad interpretation of "parking" unbound from temporal limits.

Tarango's second argument in favor of the Parking Exception restoring coverage—that the petition in the Underlying Action "does not allege conduct with respect to the trailer that comes within the Auto Exclusion under the *Lindsey* factors," Def.'s Resp. Br. Pl.'s MSJ 27,—fails because the Court has already found that the plaintiffs in the Underlying Action pleaded facts showing that Russell's injuries arouse out of the use of the tractor trailer. Additionally, though Penn-America offers persuasive authority from another Circuit holding that a Parking Exception did not apply to unloading and loading operations, Pl.'s MSJ Br. 23–24, the Court need not address this argument because Tarango has failed to prove that the Parking Exception applies. Accordingly, the Parking Exception does not restore coverage.

Because the petition in the Underlying Action *only* alleges facts excluded by the policy—and because no exception restores coverage—Penn-America is under no duty to defend Tarango in the Underlying Action.

II. <u>Penn-America has no duty to indemnify Tarango.</u>

The duty to defend and the duty to indemnify are "separate and distinct" obligations under Texas law. *Ryan*, 274 F.3d at 323–24 (citing. *Am. Alliance Ins. Co. v. Frito-Lay, Inc.,* 788 S.W.2d 152, 153 (Tex. App.–Dallas 1990, writ dism'd)). An insurer's duty to indemnify "is triggered not by the allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy." *Allstate Tex. Lloyds v. Rogers*, 2011 WL 13232162, at *7 (N.D. Tex. Nov. 1, 2011) (quoting *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 n.41 (Tex. 2008)). This means "in many cases an insurer may have a duty to defend but, eventually, no obligation to indemnify." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997)).

Texas courts, therefore, generally "only consider[ ] the duty-to-indemnify question justiciable after the underlying suit is concluded, unless '*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*' " *Northfield Ins.*, 363 F.3d at 529 (emphasis in original) (quoting *Griffin,* 955 S.W.2d at 84); *see also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 163 (5th Cir. 2015) (recognizing that the Supreme Court of Texas has long interpreted the Texas Constitution as establishing "no justiciable controversy regarding the insurer's duty to indemnify before a judgment has been rendered against an insured") (citing *Griffin,* 955 S.W.2d at 83). "If a duty to defend is not found, then there can be no duty to

indemnify." *Mid-Continent Cas. Co. v. Oney*, 2004 WL 1175569, at *7 (N.D. Tex. May 27, 2004)

Here, Penn-America has no duty to indemnify Tarango because it has no duty to defend its insured in the Underlying Action. *See Universal Cas. Co. v. A.E. Consultants, LLC*, 2009 WL 10697417, at *8 (S.D. Tex. June 26, 2009) (citing *Northfield Ins.*, 363 F.3d at 528) (finding the plaintiff insurance company had no duty to indemnify the insured where it had no duty to defend in the underlying action); *Oney*, 2004 WL 1175569, at *7 ("[T]he Court finds that Plaintiff can have no duty to indemnify Bryant Salt Water Disposal, Inc. because this Court has found that Plaintiff has no duty to defend Bryant Salt Water Disposal, Inc.").

## Recommendation

For the reasons stated, the District Court should GRANT Plaintiff Penn-America's Motion for Summary Judgment (ECF No. 23) and DENY Defendant Tarango's Motion for Summary Judgment (ECF No. 28).

**SO ORDERED**.

April 16, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).